## THE EUREKA NO. 45.

## BERWIND WHITE COAL MINING CO. v. CITY OF NEW YORK et al.

District Court, S. D. New York.

Feb. 14, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (Robert F. Lenahan, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for respondent Compagnie Transatlantica Italiana.

Arthur J. W. Hilly, Corp. Counsel, of New York City (Matthew J. Troy and William J. Leonard, both of New York City, of counsel), for respondent City.

FRANK J. COLEMAN, District Judge.

Libelant's coal barge foundered at Pier 74 on May 1, 1926 and recovery is sought from the city of New York, which owned the pier, and from the Compagnie Transatlantica Italiana, which controlled the pier at that time, and to whom the barge was consigned. The injury was caused by the barge resting upon the top of a broken fender pile which on the falling tide stove a hole in the bottom of the barge.

About six weeks before the accident the respondent Compagnie Transatlantica Italiana had made application to the city of New York for what it called a lease of the pier. About two weeks before the accident, the city granted it a revocable monthly "permit" covering the pier which was to take effect on May 1st. For several days before May 1st the Compagnie Transatlantica Italiana had its steamship Guiseppe Verdi moored at the pier under permission from the city given in contemplation of the permit which was to go into effect on May 1st.

At the request of the agents of the Compagnie Transatlantica Italiana, libelant's barge was consigned to the Guiseppe Verdi on the afternoon of April 30th, and was towed by libelant's tug to the steamship, where it became apparent that it would be impossible at that time to moor alongside of the steamship, so the tug placed the barge alongside of Pier 74 beyond the end of the

steamship. Early in the morning of May 1st, the ebb tide permitted the barge to rest on the pile as above stated and caused the sinking.

There is no direct evidence as to how long the pile had been in the dangerous condition. It was a part of the fender piling of the pier, and had been broken several feet below the surface of the water. There is some evidence that the break appeared to be a new one, though I am far from convinced of that fact. There is, however, no evidence of any circumstances from which I can infer that the defect had existed for one hour before the barge was moored. The case differs from that relied on by libelant, Kenny v. Balbach Smelting & Refining Co. (D. C.) 6 F.(2d) 671, because in the latter case apparently there was no qeustion but that the pile had been broken long before if it was in fact permanently attached to the bottom. As I read Judge Ward's opinion, the real question was whether the damage had been done by some object adventitiously there or by the remains of a permanent pile. Once he found that the pile was permanently attached, its location was such that no question could arise as to its not having been broken long before.

In the present case I have no doubt but that the pile was permanently attached to the bottom and constituted a part of the regular fender piling which might be broken at any time. Where there is not a scintilla of evidence to show how long it had been broken, I cannot assume that it was long enough to have given constructive notice.

██ The burden was on libelant to prove negligence on the part of the respondents in failing to repair the defect. In the absence of notice of the defect, either actual or constructive, there was no negligence in failing to repair it. The defect itself was not of such a character as to presuppose its prior duration. Indeed for all that appears the pile may have been broken by libelant's own barge.

Libelant urges that the communications between the city of New York and the steamship company disclose that both of them had actual knowledge of the need of repairs on the pier. This is entirely true, and apparently the pier was generally in poor condition. The agreement between the parties required the steamship company to expend $2,000 a month in repairs which were to be subject to the supervision of the city. There is, however, no indication that the parties had in mind any repairs to the pile which did the

damage or to anything in its neighborhood. For all that appears, the condition of the pier which the parties had in mind may have been entirely confined to the superstructure or to its planking. This general defective condition and the respondents' knowledge of it would be circumstances bearing upon a question of respondents' negligence in failing to discover a defect which had been in existence for a certain length of time; but in the present case it would be a pure surmise to predicate any existence of the defect prior to the mooring of the barge.

If the above conclusions are correct, it would be useless to consider the mutual relations between the two respondents and their respective responsibilities to the third parties. I accordingly direct a decree for the respondents.

## THE HALO.

District Court, S. D. New York.
April 24, 1930.

